IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Tommy Algathen Allen, ) | |
| ) | C.A. No.: 7:05-2450-RBH |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER GRANTING SUMMARY** |
| ) | **JUDGMENT** |
| BMW Manufacturing Co., LLC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

### **PROCEDURAL AND FACTUAL BACKGROUND**

The Plaintiff was hired on January 27, 2003 as a production associate for the defendant BMW Manufacturing. Sometime in February of 2003, he informed his employer that he had carpal tunnel syndrome.[1] Due to the complaint made by the plaintiff regarding his symptoms, the employer had him examined again by Dr. Zimmerman who did not find evidence of the syndrome. However, Dr. Zimmerman restricted the plaintiff as to his work, and the plaintiff never actually worked another shift for the defendant.

On April 1, 2003, the plaintiff filed a charge with EEOC on the basis of failure to accommodate under the Americans of Disabilities Act (ADA). On May 15, 2003, the plaintiff filed a workers' compensation claim. As a result of the filing of the workers' compensation claim, the plaintiff was referred to Dr. Mark L. Lencke, a neurologist in Columbia, South Carolina. On April 14, 2003, Dr. Lencke performed electrophysiology studies of the plaintiff's right upper extremity. These studies

---

[1] Prior to his being hired, the plaintiff had a pre-employment physical in January of 2001 by Dr. Zimmerman. In this examination, he showed a "very mild neuropathy pattern" which was not considered by the doctor to be carpal tunnel syndrome.

1

showed normal nerve conditions of the right upper extremity and no evidence of median neuropathy of his right wrist.

The affidavit of Dr. Mark K. Lencke is attached to the defendant's motion for summary judgment in this case, and indicates that the defendant contacted his office on or about January 28, 2004, to schedule an appointment to assess whether the plaintiff could return to work, and if he could, what restrictions would be placed on his activity at work. The appointment was scheduled for March 2, 2004. The affidavit states that the plaintiff did not appear for his appointment on March 2, 2004, and that the physician notified BMW accordingly. Another appointment was scheduled for March 26, 2004. The doctor's affidavit indicates that on March 26, 2004, the plaintiff appeared at his office but refused to be tested, and requested an out of work form, so that he would not have to return to work. The doctor refused to give him the form. Dr. Lencke faxed the employer at its request, a handwritten statement indicating that plaintiff "showed for his appointment on March 26, 2004, but refused to have testing done." [Doc. # 30-11]. The plaintiff 's version of the facts on this matter is that, when he appeared at the doctor's office, he was told he had an outstanding bill and that is reason why he did not proceed further with the testing.

Various letters sent by the defendant to the plaintiff were introduced into evidence confirming the doctor's appointments. In the letter dated March 12, 2004, the defendant notified the plaintiff of the March 26, 2004 appointment; that BMW is paying for the appointment and evaluation; and that "if you fail to keep this appointment, you will be considered to involuntarily resign from your employment with BMWMC." [Doc. # 30-12]. By letter dated April 12, 2004, the defendant informed the plaintiff that, since he did not allow the examination to occur, pursuant to the letter of March 9, 2004, his employment was terminated effective April 12, 2004.

The plaintiff filed a lawsuit *pro se* ("Allen 1") on January 7, 2004, Civil Action No. 7:04-0052. An attorney appeared on behalf of the plaintiff in "Allen 1" on July 13, 2004. The plaintiff asserted in his *pro se* Statement of Claim that BMW regarded the plaintiff's carpal tunnel syndrome as a disability and failed to accommodate that disability. In addition, he asserted "BMW after sending me to Dr. Zimmerman would not allow me to return to work. However, a while male named Jim who was also sent to Dr. Zimmerman for hand and wrist pain was given different treatment. He was not prohibited from returning to work although he had a production position as well." The plaintiff included in his attachment to the Statement of Claim additional details regarding the white male, allegedly also suffering from carpal tunnel syndrome who he alleges was treated differently.

During the pendency of "Allen 1", the plaintiff filed a second charge with the EEOC on October 22, 2004.

A motion for summary judgment was filed by the defendant in "Allen 1" on March 11, 2005. The plaintiff filed a response to the motion for summary judgment on March 29, 2005. The Magistrate Judge issued a Report and Recommendation on April 25, 2005, recommending that the defendant's motion for summary judgment be granted on the basis that plaintiff cannot show he was regarded as disabled under the ADA. On May 27, 2005, a right to sue letter was issued regarding the second charge.[2] This court entered an Order on March 13, 2006 in "Allen 1", adopting the Report and Recommendation and granting the defendant's motion for summary judgment. No motion to reconsider was filed, and no appeal was taken from the Order.

The instant action (herein referred to as "Allen 2") was filed August 23, 2005, alleging that the plaintiff was discriminated against because of his race and that white employees with the same medical

---

[2] The right to sue letter was attached to the Complaint in "Allen II".

condition were treated more favorably. This matter is before the court on motion by the defendant for summary judgment filed April 27, 2006. Plaintiff alleges violations of Title VII and 42 U.S.C. § 1981.

This matter is now before the undersigned for review of the Report and Recommendation ("the Report") filed by United States Magistrate Judge Bruce H. Hendricks, to whom this case had previously been assigned pursuant to 28 U.S.C. § 636 and Local Rule 73.02(B)(2)(g). Magistrate Judge Hendricks recommends that the defendant's motion for summary judgment be granted on the basis of the doctrine of *res judicata,* and in the event the District Court rejects that recommendation, she recommends that summary judgment should be granted on the basis that the plaintiff has not sufficiently proved a *prima facie* case. In addition, even if the plaintiff has proved his *prima facie* case, she recommends a finding that there is no proof that the employer's stated reasons for discharge were pretextual.

## *SCOPE OF REVIEW*

In conducting its review, the Court applies the following standard:

The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

*Legal Standard for Summary Judgment*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that judgment on the pleading is appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."*Id. (*quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In this case, defendant "bears the initial burden of point to the absence of a genuine issue of material fact." *Temkin v. Frederick County Commrs*, 845 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with fact sufficient to create a triable issue of fact." *Id.* at 718-19 (citing *Anderson*, 477 U.S. at 247-48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, of conclusory allegations to defeat a motion for

5

summary judgment. *Id*. and *Doyle v. Sentry, Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits (*see* Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Baber*, 977 F.2d 872, citing *Celotex Corp., supra*. Moreover, the nonmovant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1223 n. 7 (4th Cir. 1989).

*Motion to Strike*

After filing timely objections to the Report on November 27, 2006, the plaintiff filed a document on December 18, 2006 entitled "Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Objection to Report and Recommendation of Magistrate Judge [docket #39]. Various documents are attached. The defendant has filed [40] Motion to Strike the documents referenced by the plaintiff in the memorandum and also to strike the memorandum in its entirety on the grounds that the memorandum relies on documents either not in evidence or not submitted to the Magistrate Judge. Plaintiff has not filed a response to this motion.

This Court grants the motion to strike but denies the request for attorney's fees. A party must present his best case to the Magistrate Judge and cannot wait until after a Report and Recommendation has been issued to point to specific parts of the record that are relevant to a denial of summary judgment. *See Callas v. Trane CAC, Inc.*, 776 F. Supp. 1117 (W.D. Va. 1990). Moreover, although Fed. R. Civ. P. 72(b) allows the Court in its discretion to receive additional evidence as part of its de novo review, the Court finds that in the case at bar such would not be appropriate. The plaintiff has not stated a reason for not filing the documents before the Magistrate Judge or even at the time that he filed

6

his timely objections to the Report. Accordingly, the Court will not consider the plaintiff's supplemental memorandum or the attachments to it.

## LEGAL ANALYSIS

### *RES JUDICATA*

"Under *res judicata* principles, a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication. . .The doctrine encompasses two concepts: claim preclusion and issue preclusion, or collateral estoppel. . Rules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented. . .Issue preclusion is more narrow and applies when the later litigation arises from a different cause of action. It operates to bar subsequent litigation of those legal and factual issues common to both actions that were 'actually and necessarily determined by a court of competent jurisdiction' in the first litigation." *In re Varat Enters., Inc*, 81 F.3d 1310, 1315 (4th Cir. 1996).

Three factors must be shown for claim preclusion to apply: 1) the prior judgment was final, on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical or in privity in the two actions; and, 3) the claims in the second matter are based on the same cause of action involved in the earlier proceeding. *Id*.

As discussed by the Magistrate Judge, the prior judgment in "Allen 1" was the final order granting summary judgment on the merits by this court and involved the same parties. The issue presented is whether the third factor is present, that being that the claims in the second matter are based on the same cause of action involved in the earlier proceeding.

Claims are generally considered to be part of the same cause of action when they arise out of the same transaction or series of transactions, or the same core of operative facts. *Id.* 81 F.3d at 1316.

The plaintiff filed his first lawsuit on January 7, 2004. This was before April 12, 2004, which was the date on which the defendant contends the plaintiff's employment was terminated. The crux of the plaintiff's claims in "Allen 1" were that BMW failed to accommodate his alleged disability.[3] Therefore, the Court is disinclined to find the instant case is barred by *res judicata*, since the first case when filed was based on failure to accommodate an alleged disability and the plaintiff had not yet been terminated. The second case is based upon the plaintiff's termination or separation from employment and alleged racial discrimination. In addition, the plaintiff filed his second charge with the EEOC on October 22, 2004, and received the right to sue letter on May 27, 2005, after the Magistrate Judge issued her Report and Recommendation on April 25, 2005.

While the two lawsuits factually overlap to some extent, the fact remains that in "Allen 1", plaintiff had not been terminated when he filed his complaint. Secondly, when he was terminated he filed "Allen 2" only after he had received his right to sue letter. He had not received his right to sue letter on "Allen 2" until a month after the Magistrate had already issued his Report and Recommendation in "Allen 1". Further, the Court did not address race discrimination in "Allen 1", and it is unclear if in their EEOC response to the "Allen 2" charges the defendants suggested that the race discrimination claim and termination from employment should be included or amended in the "Allen 1" lawsuit. Nevertheless, out of an abundance of caution and in consideration of the equitable principles

---

[3] Plaintiff also alleged that one reason for the failure to accommodate was his race, although that specific reason was not discussed by the Magistrate Judge or this Court in "Allen 1".

that surround claim and issue preclusion, equity and fairness dictate that *res judicata* does not bar "Allen 2" under the present circumstances.

Therefore, the case had already proceeded past the motion for summary judgment, and was awaiting ruling by this Court at the time the right to sue letter was received. Under these circumstances, the Court does not believe that *res judicata* bars the instant action insofar as it is based on the plaintiff's termination on the basis of his race under Title VII and Section 1981.

***Merits of Plaintiff's Racial Discrimination Claims***

The Magistrate Judge also recommended that summary judgment be granted on the merits on the plaintiff's claims. The Court has reviewed the plaintiff's objections, the Report and Recommendation, and the record in this case, and agrees with the Magistrate Judge that the plaintiff has failed to meet its burden of proof as to the merits of his claims.

The plaintiff contends in his objections that he established a *prima facie* case of discrimination based upon race, apparently based upon the disparate treatment of the plaintiff when compared to the white employee, Fulcher. He further contends that the employer terminated him in retaliation for filing a charge with the EEOC and a lawsuit with this Court. He also contends that the defendant orchestrated evidence regarding his medical records.

As to the retaliation claim being made by the plaintiff, the Court agrees with the Magistrate Judge that the plaintiff has nowhere alleged in his Complaint that he was discharged in retaliation for engaging in protected activity. In addition, the plaintiff only makes a conclusory reference in his four page response to the motion for summary judgment that his claim of race discrimination is "legally supported by the record herein." (Page 2 of docket entry #31). The plaintiff's affidavit contains no reference to retaliation other than to say, again in a conclusory way, that he "feels that he was retaliated

9

against for filing a lawsuit against Defendant. The plaintiff presented to the Magistrate Judge no evidence to support this bare allegation of retaliatory discharge.[4] Therefore, the Court grants the motion for summary judgment as to retaliation.

In addition, the Court does not agree with the plaintiff's assertion in his objections that the fact the termination occurred about three months after his filing the first lawsuit creates a jury issue. "In order to prove a causal connection based on temporal proximity *alone*, the time between the protected activity and adverse employment action must be 'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001), citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (four-month period insufficient).

Finally, the Court will consider the argument by the plaintiff in his objections that the deposition of James Fulcher, the white employee, creates a *prima facie* case. However, the plaintiff did not provide this deposition to the Court in his response to the motion for summary judgment. In addition, the portions of that deposition which the defendant attached to its motion for summary judgment do not provide sufficient support for the plaintiff's claim.

However, even if the plaintiff has proved a *prima facie* case of disparate treatment, he has still failed to offer competent evidence that the employer's stated reason for discharge was pretextual. Plaintiff argues in his objections that the employer's reasons were pretextual because "plaintiff had previously received a 'fit to work' evaluation by Dr. Evans in which a nerve conduction study was not

---

[4] Local Rule 7.06 regarding responses to motions provides in the second paragraph thereof: "Any response supported by discovery material shall specify with particularity the portion of the discovery material relied upon in support of counsel's position, summarize the material in support of counsel's position, and shall attach relevant portions of the discovery material or deposition."

required to perform a 'fit to work' evaluation. However, very specific restrictions were given by Dr. Evans as requested by BMW." Nevertheless, the plaintiff failed to point the Court to any evidence to support his argument that this shows pretext. The only evidence before this Court regarding Dr. Evans was in the portion of the plaintiff's deposition which was submitted by the defendant as follows:

> Q. Why is Cathy Dion writing you a letter telling you to keep an appointment with Dr. Lencke?
> A. Well, it was. . . I guess it was supposed to be with–I had with Dr. Evans.
> Q. It was to see if Dr. Evans' work restrictions were still in place, correct?
> A. I don't know.

(Plaintiff's deposition, page 121).

The plaintiff's affidavit states in ¶13 that he believes that he should have been allowed to return to work based on the report of Dr. Evans dated May 5, 2003. However, this report was not presented to the Court in a timely fashion.[5]

In addition, it is not the Court's obligation to comb the record to glean facts in support of a party's position.[6] Having said this, the Court notes that the Report and Recommendation in "Allen 1" states that in light of the differing opinions of Dr. Zimmerman on February 28, 2003 and the opinion of Dr. Lenke on April 10, 2003, the plaintiff was referred to Dr. Evans for a third opinion. Dr. Evans concluded in the May 5, 2003 report that the plaintiff was fit for work with restrictions as to wrist flexion. *See also*, Plaintiff's Deposition, p. 115, attached to Defendant's Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, where the plaintiff testified that Dr. Evans told him he would see about getting the plaintiff back to work but that he did not advise

---

[5] The Report was attached to the Supplemental Memorandum and has been excluded by the Court from consideration hereinabove.

[6] *See* Local Rule 7.06.

11

him that he was releasing him with restrictions. However, contrary to the plaintiff's argument, this opinion does not show pretext by the employer in connection with its requirement that the plaintiff again see Dr. Lencke in 2004 for the purpose of determining whether any restrictions should be placed on the plaintiff if he could return to work.

The Court has reviewed the objections, the Report, and the record. The Court adopts the Report as modified herein. The defendant's motion for summary judgment is **GRANTED**.

**AND IT IS SO ORDERED**.

S/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, S.C.
March 30, 2007